AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 05 C 2009 ) |
| | ) HONORABLE CHARLES R. NORGLE ) |
| AMERICAN EAGLE AIRLINES, INC., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge

Plaintiff Association of Flight Attendants-CWA, AFL-CIO ("AFA") filed its Complaint against American Eagle Airlines, Inc. ("AE") alleging violations of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. AFA seeks to enforce a binding arbitration award against AE issued by the American Eagle Flight Attendant System Board of Adjustment ("System Board"). AFA further seeks an order directing AE to comply with the terms of the System Board and to comply with AFA's requests to inspect personnel files. The Collective Bargaining Agreement ("CBA") provides that all minor disputes are subject to exclusive and mandatory arbitration. For the that reason, the court, *sua sponte*, dismisses the Complaint for improper venue.

**I. BACKGROUND**

**A. Facts**

AFA and AE entered into a CBA on March 2, 1998, which continued through March 2, 2002. Each year thereafter, the CBA renewed itself annually. Sections Twenty-One and Twenty-Two of the

1

CBA establish procedures for filing grievances. The grievance process culminates in a final and binding arbitration before the three-member System Board.

On April 1, 1999, an arbitration hearing was held with the System Board regarding the termination of flight attendant Sherri Mayes ("Mayes"). The issue at the arbitration hearing was AE's refusal to allow Mayes or AFA to copy her personnel file. AFA claimed that Section 27(C) of the CBA gave Mayes the right to review her file, otherwise she would be unable to respond to the charges brought against her. AE alleges that Section 27(C) only applies to "flight attendants" and as a result of her termination, Mayes was no longer a flight attendant. The arbitrator did not find AE's argument persuasive, and held that AFA should have been given the opportunity to inspect Mayes' file before the arbitration hearing.

Several days after the decision in the Mayes arbitration, Diana Kishaba ("Kishaba"), the local union vice president for AFA, requested the file of another terminated flight attendant, Stacy Hall ("Hall"). AE denied the request. Hall was eventually reinstated, therefore AFA did not pursue the denial of her personnel file. However, Kishaba asked an AE official for the file of Dineen Hicks ("Hicks"), another terminated flight attendant. That request was granted. AFA did not make any other requests for terminated flight attendants personnel records until 2001.

In January 2001, Pam Gibson ("Gibson"), a terminated flight attendant requested to inspect her personnel file pursuant to Section 27(C) of the CBA. AE refused to give Gibson her file, stating that Section 27(C) only applied to current employees. Gibson filed a grievance regarding AE's refusal to allow her to inspect her personnel file, and on December 10, 2001, the System Board held a hearing on the grievance. On March 16, 2002, the System Board issued its decision by Arbitrator Nicolau ("Nicolau Award"). The Nicolau Award stated that any flight attendant who was terminated, and who

had filed an appeal of the termination has a right to inspect and copy her or his personnel file under Section 27(C) of the CBA.

AFA alleges that AE violated the Nicolau Award by "cherry picking" certain documents to withhold from employees' personnel files, and claiming such documents were not part of the personnel file. Specifically, AFA claims that after flight attendant Jose Leon ("Leon") was terminated, AE provided him with a copy of his personnel file that was missing a passenger letter. AE informed Leon that he was not entitled to read the letter. Additionally, after flight attendant Esau Flores ("Flores") was terminated, he requested and received a copy of his personnel file. AFA alleges that the file did not contain a report about the incident that lead to Flores' termination. AFA further alleges that AE's practice of cherry picking personnel files is a violation of the Nicolau Award.

## B. Procedural History

AFA filed its initial Complaint on April 6, 2005, and its Amended Complaint on July 8. On August 8, 2005, AE filed its Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). AFA filed its Response on August 14, and AE Replied on August 26. Because the issue in this case deals with venue rather than jurisdiction, the court, *sua sponte*, dismisses the Complaint under Federal Rule of Civil Procedure 12(b)(3), instead of Rule 12(b)(1).

## II. DISCUSSION

### A. Standard of Review

#### *1. Federal Court Jurisdiction*

The court "has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits in any case." Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003). Federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir.

2000) (quotation and internal marks omitted). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged." Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). In Market Street Assocs. Ltd. Partnership v. Frey, the Seventh Circuit stated: "We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care . . . ." Market Street Assocs. Ltd Partnership, 941 F.2d 588, 590 (7th Cir. 1991); see also Hart v. Terminex Intern., 336 F.3d 541, 544 (7th Cir. 2003) (reiterating the admonition that litigants and courts must "meticulously review the limits of federal jurisdiction" so as to avoid the "waste of federal judicial resources and delay of justice" that occurs where a case is found to lack subject matter jurisdiction only after proceeding on the merits); see also U.S. v. Lloyd, 398 F.3d 978 (7th Cir. 2005).

### 2. Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. FED. R. CIV. P. 12(b)(3). Under this rule, the court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment." Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (case dismissed because forum selection clause in contract required arbitration). Furthermore, upon "holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make finds of fact." Id. (citing Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004)).

### 3. Arbitration Provision

As a preliminary matter, the court notes that the overarching issue in this case is the proper venue, not jurisdiction, of this action. The court has subject matter jurisdiction, by virtue of AFA's reliance of the RLA in its Complaint. However, the RLA provides the venue for exclusive and mandatory arbitration for disputes between employees and management of a common carrier:

4

> The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes. 45 U.S.C. § 153(i)

Furthermore, the CBA both parties agreed to requires mandatory arbitration for grievances filed by employees:

> In compliance with Section 204, Title II of the Railway Labor Act . . . a System Board of Adjustment is established for the purpose of adjusting disputes or grievances arising under the terms of this Agreement. . . The Board will have jurisdiction over grievances filed pursuant to the terms of this Agreement. Compl., Ex. A, at 71.

Courts have held that the language in the RLA provides for mandatory arbitration. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994); Coker v. Transworld Airlines, Inc., 165 F.3d 579, 583 (7th Cir. 1999). The court is mindful that arbitration forgoes the costly expenses of litigation for a more economical method to solve legal disputes. "Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). In addition, "parties are bound to an arbitration provision even if they did not read the provision." James v. McDonald's Corp., 417 F.3d 672, 678 (7th Cir. 2005). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long

5

approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

Pursuant to the Federal Arbitration Act ("FAA"), arbitration may be compelled if the following three elements are shown: "(1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005). "The [Federal Arbitration Act] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" BCS Ins. Co. v. Wellmark, Inc., 410 F.3d 349, 351 (7th Cir. 2005) (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002)).

Here, it is undisputed that there is a written agreement to arbitrate, as demonstrated in the CBA. Second, the dispute here concerns the procedures and terms found within the CBA; this type of dispute concerns the "the interpretation or application of agreements concerning. . . rules" found in the CBA. See Compl., Ex. A, at 72. Lastly, there is a refusal to arbitrate, given AFA's initiation of the current lawsuit.

### 4. *The issue in the present case is a "minor issue"*

The issue in this case is only a "minor dispute" under the RLA. See 45 U.S.C. § 153(i). Minor disputes are those that "grow out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Id., see Chicago & North Western Trans. Co. v. Railway Labor Executives Ass'n, 908 F.2d 144, 148 (7th Cir. 1990). Furthermore, "the RLA grants exclusive jurisdiction to resolve minor disputes regarding railway labor agreements to arbitrators on the National Railroad Adjustment Board or *adjustment boards established by an employer and a union.*" Brotherhood of Maintenance of Way Employees v. Union Pacific R.R. Co., 358 F.3d 453, 456 (7th Cir. 2004) (emphasis added). The "distinguishing feature of a minor dispute is that the dispute

6

can be conclusively resolved by interpreting the existing CBA" Brown v. Illinois Central R.R. Co., 254 F.3d 654, 658 (7th Cir. 2001) (citing Monroe v. Missouri Pacific R.R. Co., 115 F.3d 514, 516 (7th Cir. 1997); Hawaiian Airlines, Inc., 512 U.S. at 252).

Here, the issue in this case centers around what documents must be included in the personnel file of terminated employees under Section 27(C) of the CBA. That issue is raised for the first time in the District Court; it was never raise before the System Board. Therefore, a decision on the merits of this case will necessarily revolve around the court's definition of the term "personnel file" for purposes of the CBA. "A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA." Brown, 254 F.3d at 654. Because AFA's case requires a definition of a term found exclusively in the CBA, the district court is the improper venue for this action. See Brotherhood of Maintenance of Way Employees, 358 F.3d at 456.

Both parties agreed to arbitration when they entered the CBA. They traded "the formalities of the judicial process for the expertise and expedition associated with arbitration." Lefkovitz, 395 F.3d at 780. The parties are not allowed to ignore this signed agreement in favor of litigation in federal court. While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co. v. M/A ORSULA, 354 F.3d 603, 608 (7th Cir. 2003) (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select). As a result, the proper venue for this dispute is before the System Board, and not in the United States District Court for the Northern District of Illinois.

7

## III. CONCLUSION

For the reasons stated above, the Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, SR. Judge

United States District Court

DATED: 9-19-05